**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL WYSOCZAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:23-CV-00905 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CAMBRIDGE MUTUAL FIRE INSURANCE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Cambridge Mutual Fire Insurance issued a business-owner insurance policy to Michael Wysoczan, which was effective from March 2020 to March 2021. R. 1, Compl. ¶ 5.[1] The policy insured Wysoczan's interest in an apartment building from several different types of loss. *Id.* ¶ 6. The current insurance dispute between Wysoczan and Cambridge Mutual involves structural damage to a porch; Wysoczan claims that the damage was caused by ice formation and damming, and thus is covered by the policy. *Id.* ¶¶ 7–8, 11.

Wysoczan does not ask for an outright declaration that the policy covers the damage. Instead, he seeks a judgment declaring that the coverage dispute must be resolved by an appraisal process that is set forth in the insurance agreement. Compl. ¶¶ 15–16. In response, Cambridge Mutual contends that the dispute does not trigger

---

[1] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

the appraisal process.[2] R. 8, Answer, Defenses, and Countercl. at22 ¶ 41.[3] The parties have cross-moved for judgment on the pleadings. R. 11, Mot. J. Pleadings; R. 15., Def.'s Resp. For reasons discussed below, the Court grants Wysoczan's motion and correspondingly denies Cambridge Mutual's motion.

## I. Factual Background

Wysoczan owns an apartment building in the Ukrainian Village neighborhood of Chicago. Compl. ¶ 1. Wysoczan alleges that, on around February 15, 2021, his porch was damaged by "ice damming/ice formations and resulting water from melting ice." *Id.* ¶ 7. Two days later, on February 17, Wysoczan notified Cambridge Mutual of the damage. Answer ¶ 8. Cambridge Mutual then retained L.J. Shaw & Company to assist in the investigation of the claim. *Id.* ¶ 9. Initially, no dispute over coverage arose: L.J. Shaw sent Wysoczan a letter acknowledging the "claim for water damage resulting from an ice dam occurring in an enclosed porch area." *Id.* ¶ 12. Based on L.J. Shaw's analysis, Cambridge Mutual paid Wysoczan for these interior damages, and the insurer admitted that "that water damaged interior surfaces of the enclosed porch" were covered by the insurance policy. *Id.* ¶¶ 7, 9.

The timeline concerning the disputed category of damages is a bit longer. Around February 23, Wysoczan expressed to L.J. Shaw that he was claiming additional structural damage under the insurance policy from the ice. Answer, Defenses, and Countercl. at 13 ¶ 11. This time, SEA, Ltd., on behalf of Cambridge Mutual,

---

[2] This Court has diversity jurisdiction under 28 U.S.C. § 1332.

[3] For clarity, citations of R. 8 include both page number(s), based on the docket-generated pagination found on the header, as well paragraph number(s).

inspected the porch to investigate this second claim. *Id.* at 14 ¶ 13. SEA concluded

that the formation of ice had not caused any structural damage. *Id.* at 14 ¶ 14. Based

on this investigation, Cambridge Mutual determined that only the interior surfaces

of the porch had "plausibly sustained" damage from the ice. *Id.* at 14 ¶ 15. After the

denial of coverage, a few months later, on July 20, Wysoczan sent photographs to

Cambridge Mutual "depicting damage to the enclosed porch that Cambridge Mutual's

investigation had missed." *Id.* at 15 ¶ 18.

The factual record goes silent for several months. Then, on February 15,

2022—after attempts to schedule a reinspection of the alleged structural damages

failed—Cambridge Mutual received a "Demand for Appraisal" from Wysoczan's des-

ignated appraiser. Answer, Defenses, and Countercl. ¶ 19. This demand sought to

utilize the appraisal process specified in the insurance agreement. Here is the perti-

nent provision:

> If we and you disagree on the amount of loss, either may make written demand
> for an appraisal of the loss. In this event, each party will select a competent
> and impartial appraiser. The two appraisers will select an umpire. If they can-
> not agree, either may request that selection be made by a judge of a court hav-
> ing jurisdiction. The appraisers will state separately the amount of loss. If they
> fail to agree, they will submit their differences to the umpire. A decision agreed
> to by any two will be binding. Each party will:
>
>     a.    Pay its chosen appraiser; and
>
>     b.    Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

R. 8-1, Ins. Policy at 51.[4]

---

[4]Pinpoint citations of the insurance policy are based on the docket-generated pagina-
tion found on the header, not the footer, of the document.

In early April 2022, SEA reinspected the porch on behalf of Cambridge Mutual and again found that none of the structural damage to the porch could be traced to the ice event. Answer, Defenses, and Countercl. ¶ 23. In early May 2022, Cambridge Mutual sent a letter repeating the decision to deny coverage for all damages other than the interior damage and rejecting Wysoczan's demand for appraisal. *Id.* ¶ 26. The following year, in February 2023, Wysoczan's designated appraiser sent Cambridge Mutual an email renewing the appraisal request. *Id.* ¶ 27. This email included a $166,732.55 estimate from Cera Restoration, which Wysoczan alleges is the cost of repairing the structural damage from the ice event. *Id.*; Compl. ¶ 10. Wysoczan then filed this case in February 2023, claiming that the insurance agreement required them to resolve this dispute through appraisal. *Id.* ¶ 16.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(c), "a party may move for judgment on the pleadings after the pleadings are closed." Judgment on the pleadings in favor of a party is proper if "it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the [moving party] is entitled to relief." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.,* 972 F.3d 915, 919 (7th Cir. 2020) (cleaned up).[5] "As with a motion to dismiss, the court views all facts and inferences in the light most favorable to the non-moving party." *Federated Mut. Ins. Co. v. Coyle*

---

[5]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

4

*Mech. Supply Inc.,* 983 F.3d 307, 313 (7th Cir. 2020) (cleaned up). A judgment on the pleadings can only be granted if "the moving party demonstrates that there are no material issues of fact to be resolved." *Moss v. Martin,* 473 F.3d 694, 698 (7th Cir. 2007) (cleaned up).

### III. Analysis

The parties' dispute turns on the scope of the appraisal provision in the insurance agreement. The key question is whether their dispute about the cause of structural damage qualifies as a dispute about "amount of loss," the subject of the appraisal provision. *See* Ins. Policy at 51. Wysoczan asks the Court to declare that this causation question is covered under the appraisal provision because "determin[ing] the amount of the loss … requires the appraisal panel to determine[] the damage to the Building caused by ice damming/ice formations." Compl. ¶ 16. Meanwhile, Cambridge Mutual asks the Court to declare that "issues of causation … are not within the purview of the Appraisal Provision." Answer, Defenses, and Countercl. at 22 ¶ 41. The cross-motions tee up the issue for decision.

According to Wysoczan, disputes about amount of loss can include—and even center on—disputes about causation. Mot. J. Pleadings at 5. Under this interpretation, Wysoczan's dispute with Cambridge Mutual about what caused structural damage to the porch is *embedded* in a dispute about the amount of loss from the ice event. Wysoczan urges that "once a covered peril such as ice damming/ice formation is admitted[,] … determining what damage was caused by this covered peril is inherent and necessary in any … appraisal when determining the amount of the loss." *Id.*. In

support of his interpretation, Wysoczan relies on several cases from this District deciding the issue under Illinois law. *Id.* at 6 (citing 10 cases); R. 17, Pl.'s Reply, at 1 (adding two additional cases). *See, e.g.*, *Runaway Bay Condo. Assoc. v. Phila. Indem. Ins. Cos.*, 262 F. Supp. 3d 599, 602 (N.D. Ill. 2017) (holding that appraisers could determine what damage was caused by a storm); *Khaleel v. Amguard Ins. Co.*, 2022 WL 425733, at *1–3 (N.D. Ill. Feb. 11, 2022) (holding that appraisers could determine what damage to a roof was caused by hail); *Adam Auto Group, Inc. v. Owners Ins. Co.*, 2019 WL 4934597, at *2 (N.D. Ill. Oct. 7, 2019) (holding that appraisers could determine the amount of damage caused by fire); *Culvey v. Auto-Owners Ins. Co.*, 2023 WL 3074344, at *3 (N.D. Ill. Apr. 25, 2023) (dismissing an argument that appraisers cannot determine what damages were caused by a storm and noting that "the valuation of damage remains inseparable from determining what caused that damage"); *River Grove Plaza Inc. v. Owners Ins. Co.*, 2022 WL 16782412, at *3 (N.D. Ill. Nov. 8, 2022) (holding that appraisers can determine the amount of damage to a collapsed roof caused by ice and snow).Wysoczan also relies on a Tenth Circuit decision, *BonBeck Parker, LLC v. Travelers Indem. Co. of Am.,* 14 F.4th 1169, 1173 (10th Cir. 2021),holding that appraisers could determine what amount of roof damage was caused by hail. Mot. J. Pleadings at 4, 8. He argues that the Tenth Circuit's analysis of appraisal provisions—both in terms of dictionary definitions of "amount loss" and the purpose of such appraisal provisions—supports his interpretation. *Id.*

Cambridge Mutual offers a narrower interpretation of what can count as a dispute about the amount of loss. Def.'s Resp. at 7. The insurer argues that as soon as

6

an insurance dispute turns on "whether the loss or damage was due to a covered cause of loss," it no longer is about the amount of loss and falls outside of the appraisal provision. *Id.* Cambridge Mutual cites *FTI Int'l, Inc. v. Cincinnati Ins. Co.* 790 N.E.2d 908 (Ill. App. Ct. 2003) to support its contention. *Id.* at 6–7. According to Cambridge Mutual, the Court should give little weight to the federal cases cited by Wysoczan because they supposedly are "not rooted in the decisions of Illinois' appellate courts." *Id.* at 8. Instead, Cambridge Mutual urges the Court to rely on *Breckenridge Apartment Homes, LLC v. Greater N.Y. Mut. Ins. Co.*, 2016 WL 11700913 (N.D. Ill. Oct. 31, 2016) because it "*did* consider the Illinois appellate courts' consistent rulings limiting the scope of appraisal." (emphasis in original).

In the context of interpreting an insurance agreement, Illinois law requires this Court to "ascertain and give effect to the intention of the parties as expressed in their agreement." *State Farm Mut. Auto. Ins. Co. v. Villicana*, 692 N.E.2d 1196, 1199 (Ill. 1998). An appraisal provision is somewhat analogous to an arbitration provision in that both are informal dispute procedures that are enforceable by courts. *See Lundy v. Farmers Grp., Inc.*, 750 N.E.2d 314, 318–20 (Ill. App. Ct. 2001) (noting some of the similarities and differences between arbitration and appraisal in Illinois law).

But so far, the Illinois Supreme Court and appellate courts are silent about the specific issue at hand.[6] For instance, and despite Cambridge Mutual's suggestions to

---

[6]Both Cambridge Mutual and Wysoczan point to Illinois Circuit Court opinions to advance their competing interpretations. *See Travelers Home & Marine Ins. Co. v. Tobin*, Case No. 20 CH 58 (Cir. Ct. Kendall Cty. Sept. 25, 2020) (accepting Cambridge Mutual's interpretation of the appraisal provision and included in the record at R. 15-1); *Lombard Tower Condo. Assoc. v. State Farm Fire & Casualty Co.*, Case No. 2022 LA 713, slip op. (Cir. Ct.

the contrary, the Illinois Appellate Court's decision in *FTI* does not address it. In *FTI*, intruders destroyed a manufacturer's equipment. 790 N.E.2d at 909. The insurance company argued that it only had to pay the cost necessary to replace or repair the equipment, whereas the manufacturer asserted that it was entitled to the *purchase* price of the equipment. *Id.* The insurer argued that the dispute had to be settled through appraisal (based on a nearly identical appraisal provision to the one in this case). *Id.* The Illinois Appellate Court disagreed, holding that the dispute did not fall under an appraisal provision because it required "the application of principles of contractual interpretation." *Id.* at 912. *FTI* thus only stands for the limited—and uncontroversial—principle that disputes that turn on principles of contract *law* are outside the appraisal process. *Id.* This rule is sensible because appraisers generally lack the *legal* expertise required to interpret contracts. *FTI* says nothing about whether appraisers are supposed to resolve factual disputes about causation.

That said, it is true that the federal district court in *Breckenridge* cited Illinois appellate cases in support of the notion that appraisers cannot decide disputes about causation. *Breckenridge Apartment Homes*, 2016 WL 11700913, at \*3. But the cases cited by the district court only stand for the same limited principle set forth by *FTI*, that is, disputes that turn on *legal* questions about contract interpretation are excluded from the appraisal process. *See, e.g.*, *Lytle v. Country Mut. Ins. Co.*, 41 N.E.3d 657, 663 (Ill. App. Ct. 2015) (holding that a dispute about whether an insurance policy

---

DuPage Cty. Jan. 11, 2023) (agreeing with Wysoczan's interpretation of the appraisal provision and included in the record at R. 17-1). But these trial court decisions just repeat arguments discussed elsewhere.

covered the costs of complying with a building ordinance fell outside appraisal); *Travis v. Am. Mfrs. Mut. Ins. Co.*, 782 N.E.2d 322, 327 (Ill. App. Ct. 2002) (holding that a dispute about whether the insurer engaged in a fraudulent scheme to pay the insured below-market estimates for damaged cars was outside the appraisal process); *Hanke v. Am. Int'l S. Ins. Co.,* 782 N.E.2d 328, 331–32 (Ill. App. Ct. 2002) (holding that a similar dispute about whether the insurer engaged in fraud was not controlled by the appraisal provision); *Lundy*, 750 N.E.2d at 319 (holding that a dispute about whether the insurer misrepresented its insurance policy could not be settled through appraisal because it "requires an interpretation of the policy language, in particular the phrase kind and quality"). Simply put, the cited line of cases stand only for the proposition that appraisers are typically neither lawyers nor judges and thus should not be asked to settle questions that require legal expertise. *Cf. Spring Point Condo. Assoc. v. QBE Ins. Corp.*, 2017 WL 8209085, at *3 (N.D. Ill. Dec. 13, 2017) (explaining that *FTI*, *Lytle*, and *Lundy* only apply to disputes about "contractual interpretation"). Nothing from these cases suggests that appraisers are unable to settle purely factual questions about the cause of physical damage.

Although the majority of this District's cases supports Wysoczan's position, there are some outliers. In one case, an insurer demanded an appraisal to determine whether a roof was damaged by a policy-covered cause or instead by normal wear and tear. *Spearman Indus. Inc. v. St. Paul Fire & Marine Ins. Co.*, 109 F. Supp. 2d 905(N.D. Ill. 2000). The court opined that disputes about the cause of damage are not disputes about the amount of loss. *Id.* at 907. Relying on this and the terms of the

appraisal provision, it held that "causation is a matter for the courts—not an appraiser—to decide." *Id.* But there was no other analysis of the point, so *Spearman* is not persuasive. *Cf. Runaway Bay Condo. Assoc.*, 262 F. Supp. at 602 ("*Spearman*'s discussion of the issue is very brief and does not disclose the basis for its conclusion.").

Conversely, the vast majority of precedent from this District supports Wysoczan. In *Adam Auto Group,* an insurer and an insured disputed the extent of damage caused by a fire. 2019 WL 4934597, at *1. The insurer argued that the dispute fell outside the appraisal provision because it was a dispute about causation. *Id.* The district court rejected this argument, explaining that in order to calculate the amount of loss, "an appraiser necessarily would have to distinguish between damages caused by the fire from those caused by other events or conditions like wear and tear." *Id.* at *2. Likewise, in *Runaway Bay Condo Association,* the insurer argued that the question of how much damage to the building was caused by a storm was outside the scope of the appraisal provision. 262 F. Supp. 3d at 601. But the district court decided against the insurer for the same reasons discussed in *Adam Auto Group*, noting that "courts have routinely rejected" the argument that causation disputes are excluded from appraisal. *Id.* at 601–02. Even in a hail-damage dispute that was almost identical to the one in *Breckenridge*, a court held that appraisers were allowed to determine whether the roof itself was harmed by hail. *Khaleel*, 2022 WL 425733, at *3. The district court explained that allowing the insurer to challenge coverage for each "individual component" (by raising separate causation issues) was inconsistent with the structure of the insurance agreement that "grant[ed] coverage to the dwelling as a

10

whole." *Id.*. The same considerations apply here: a contractual provision that assigns a dispute over loss to appraisal process also applies to the embedded dispute of causation. *See also B&D Inv. Group, LLC v. Mid-Century Ins. Co.,* 2021 WL 6125853, at *3 (N.D. Ill. Dec. 28, 2021) ("Determining the cause and extent of damage to the Property is an inherent part of an appraisal to determine the amount of loss"); *Spring Point Condo. Assoc.*, 2017 WL 8209085, at *3 ("This court concludes that whether and to what extent Spring Point's loss was actually caused by the two storms is appropriately determined by appraisal.")..

To the extent that a disagreement over "the amount of loss"—the term in the agreement that triggers an appraisal—is ambiguous, principles of Illinois contract law favor Wysoczan. Under Illinois contract law, "if the words used in the policy are reasonably susceptible to more than one meaning, they are ambiguous and will be strictly construed against the drafter." *Cent. Illinois Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004) (cleaned up). At the very least, the appraisal provision here is somewhat ambiguous on whether appraisals cover causation disputes over "the amount of loss," so construction-against-drafter principle supports resolving the ambiguity in favor of Wysoczan. Although the pleadings themselves do not explicitly identify Cambridge Mutual as the drafter, Cambridge Mutual asserted a copyright over the policy agreement, and nothing in the record even hints at the possibility that the insured here successfully altered the insurer's standard forms. *See* Ins. Policy; *see also W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 54 (Ill. 2021) ("Where competing reasonable interpretations of an insurance contract

11

exist, … the court must construe the insurance contract in favor of the insured and against the insurer that drafted the contract") (cleaned up).

This appraisal-friendly approach also finds support in Illinois law's recognition that alternative dispute resolution generally fulfills "the salutary purposes for permitting an informal mechanism to resolve private disputes finally and expeditiously … by limiting judicial intercession in the decision of the arbitrators." *Bailey v. Timpone*, 389 N.E.2d 1193, 1196 (Ill. 1979). Although the appraisal process is more limited than arbitration—because arbitration which can also include settling disputed legal questions of contract interpretation—the limitation actually supports sending causation disputes to appraisals because appraisers are usually experts in resolving *factual* questions about what damaged what. *See FTI Int'l*, 790 N.E.2d at 910–11 (noting that although the appraisal process is limited, the limits are focused on confining it to factual questions).

Finally, Cambridge Mutual argues that Wysoczan's interpretation of the appraisal provision is inconsistent with the terms of the provision because the provision explicitly gives Cambridge Mutual the right to deny the claim in the event of an appraisal. Def's. Resp. at 2. But a familiar principle of Illinois contract law is that the specific controls the general. *See Brzozowski v. N. TR. Co.*, 618 N.E.2d 405, 409 (Ill. App. Ct. 1993) ("Where one intention is expressed in one provision of a contract and a conflicting intention appears in another provision, full effect should be given to the more … specific provision, and the general provision should be subjected to such modification or qualification as the specific provisions make necessary.") (cleaned up).

Applying that principle to this case, the general right-to-deny-the-claim provision is sensibly read as one that only allows Cambridge Mutual to object to whether the insured's claim is the *type* of claim that is covered at all by the insurance policy. In other words, if Cambridge Mutual merely objects on causation (or the extent of a covered loss), and not on a contract-interpretation question, then the right-to-deny-the-claim provision does not apply. *See CenTrust Bank, N.A. v. Montpelier U.S. Ins. Co.*, 2013 WL 1855838, at *2 (N.D. Ill. May 1, 2013) (adopting this interpretation for a similar appraisal provision with the same right-to-deny language).

There are two important caveats to this Court's analysis about when causation disputes must go to the appraisal process. First, nothing in this opinion's reasoning addresses whether Cambridge Mutual can object to the appraisal process if there is a causation dispute that *itself* turns on matters of contract interpretation. For example, if an insurance policy covered damage arising from ice "formation," and a snow plow had pushed a mound of ice onto the insured's building, then the question of whether that cause of damage qualified as an ice "formation" would be one of contract interpretation. As far as the pleadings here show, however, this case presents just an ordinary factual dispute between the parties about what caused the structural damage to the porch. *See Kinkel v. Cingular Wireless, LLC*, 828 N.E.2d 812, 817 (Ill. App. Ct. 2005), *aff'd*, 857 N.E.2d 250 (Ill. 2006) ("The appraisal process itself is not designed to answer questions of contract interpretation") (cleaned up).

Second, nothing here addresses whether Cambridge Mutual can object to the appraisal process if there is a causation dispute that determines whether there is *any*

13

coverage under the insurance policy. Given the right-to-deny-the-claim language, there is a plausible argument that the appraisal process cannot force Cambridge Mutual to accept that there is some coverage if Cambridge Mutual denies the claim altogether (even if the dispute is entirely factual). In any event, though these caveats do not apply to the present analysis, they may become relevant as the dispute evolves.

Finally—and separately—Wysoczan also asks this Court to grant declaratory judgment that the appraisal process should determine whether the damage is extensive enough to require a general contractor. Compl. ¶ 16. Under Illinois law, the factual determination about whether the scope of damage requires a general contractor is part of "calculating repair or replacement cost … [and] is a question proper for appraisal." *Windridge of Naperville Condo. Assoc. v. Philadelphia Indem. Ins. Co.*, 2017 WL 372308, at *3 (N.D. Ill. Jan. 26, 2017) (citing the Illinois appellate case *Vill. of Ringwood v. Foster*, 932 N.E.2d 461, 463-64, 472 (Ill. App. 2010)). So this aspect of Wysoczan's request for judgment is granted too.

### IV. Conclusion

Wysoczan's motion for judgment on the pleadings is granted and a declaratory judgment is entered in his favor declaring that the parties are required to use the appraisal process to determine the amount of loss from the ice event covered by the insurance policy and whether the scope of the damage requires a general contractor. Cambridge Mutual's cross-motion is denied. With the declaration requiring the appraisal in place, the concrete and ripe dispute between the parties is over. Whether another dispute will arise after the appraisal process is speculative and not ripe. So

14

judgment will be entered in Wysoczan's favor, and if a future dispute arises, then the parties must file another lawsuit.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 28, 2023

15